UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
DR. HEATHER WAITMAN,

                Plaintiff,

-against-

SAINT DOMINIC'S FAMILY SERVICES, INC.,
DIANE AQUINO, and MARJORIE MCLOUGHLIN,

                Defendants.
------------------------------------------------------------------x

No. 23-cv-6061

**COMPLAINT**

**JURY TRIAL
DEMANDED**

By and through her counsel, Sussman & Goldman, plaintiff DR. HEATHER WAITMAN, as and for her Complaint against defendants SAINT DOMINIC'S FAMILY SERVICES, INC., DIANE AQUINO, and MARJORIE MCLOUGHLIN, hereby alleges as follows:

### NATURE OF THE ACTION

1. This is an action for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII"), and the New York State Human Rights Law, N.Y. Exec. L. § 290, *et seq.* (hereinafter "NYSHRL").

### PARTIES

2. Plaintiff DR. HEATHER WAITMAN is a female of legal age who resides in the County of Orange, State of New York, which is within this judicial district.

3. Defendant SAINT DOMINIC'S FAMILY SERVICES, INC. ("SDFS") is a New York State domestic not-for-profit corporation, organized and existing pursuant to the laws of the State of New York and which maintains its principal place of business at 500 Western Highway, Blauvelt, New York 10913, in the County of Rockland, State of New York, which is within this judicial district.

1

4. Defendant DIANE AQUINO is a female of legal age and serves as defendant SDFS' Chief Executive Officer ("CEO").

5. Defendant MARJORIE MCLOUGHLIN is a female of legal age and, at all relevant times, served as the President of defendant SDFS' Board of Directors.

## JURISDICTION AND VENUE

6. As this action seeks to redress violations of plaintiff's federal statutory rights under Title VII, this Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

7. As plaintiff's state law claims are so related to her federal claims that they form part of the same case or controversy as her federal claims, this Honorable Court has supplemental jurisdiction over such state law claims under 28 U.S.C. § 1367(a).

8. The events giving rise to the claims asserted herein occurred primarily in the County of Rockland, State of New York, which is within this judicial district and, therefore, venue in the Southern District of New York is proper under 28 U.S.C. § 1391(b)(2).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. On or about August 18, 2022, plaintiff submitted a Charge of Discrimination to the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), alleging unlawful retaliation under Title VII.

10. On June 14, 2023, the EEOC issued plaintiff a right to sue letter.

## FACTUAL ALLEGATIONS

11. Plaintiff began working for defendant SDFS on or about March 20, 2006 and had a stellar employment record.

12. During her employment, plaintiff served as the head of SDFS' Human Resources

("HR") department and, in 2017, was promoted to the position Senior Executive Vice President of HR & Workforce Management.

13. In this capacity, plaintiff reported directly to SDFS' CEO, a position held since July 1, 2020 by defendant Aquino.

14. On or about October 29, 2021, plaintiff received a complaint from Debra Archambault, a Senior Vice President of defendant SDFS, alleging, *inter alia*, that Aquino had made unwanted sexual advances toward her, thereby creating a sexually hostile work environment.

15. Following agency protocol, plaintiff notified Aquino of Archambault's complaint and advised that, since the complaint was about Aquino, she was going to forward it to the President of the agency's Board of Directors, defendant Margorie McLoughlin, so that she could make the Board aware of the complaint.

16. Aquino directed plaintiff not to inform McLoughlin, or any other Board member, of Archambault's complaint.

17. Plaintiff then contacted SDFS' long-time attorney, Jim Clark, Esq., and asked him to investigate Archambault's complaint.

18. Clark reported directly to Aquino, the subject of the complaint, and so this conflict of interest prevented him from investigating.

19. As such, Clark referred the investigation to a colleague, Elizabeth Leo, Esq.

20. On or about November 3, 2021, Aquino summoned plaintiff to meet with her, McLoughlin, and SDFS' Chief Financial Officer, Jim Crisci.

21. During that meeting, McLoughlin advised plaintiff that Aquino had notified her of Archambault's complaint, and both McLoughlin and Aquino stated that the complaint was without merit and that Archambault fabricated it to deflect from allegations of misconduct against her.

22. McLoughlin then directed plaintiff to have the attorney cease investigating Archambault's complaint.

23. Both McLoughlin and Aquino also directed plaintiff to deny Archambault's request for Family and Medical Leave Act ("FMLA") benefits to which she was then entitled, despite the fact that such denial contravened longstanding agency protocol and had no legal basis.

24. Plaintiff objected, noting that SDFS had an obligation to fully investigate Archambault's complaint and that Archambault was legally entitled to FMLA benefits and that there was no legal basis to deny her such leave.

25. Plaintiff also vehemently opposed McLoughlin's directive that the investigation into Archambault's complaint be discontinued.

26. It was only after plaintiff vehemently objected and expressed her strong support of continuing and completing the investigation that McLoughlin reluctantly withdrew her direction to stop the investigation, stating, in sum and substance, "Fine, you and Jim [Clark] can finish the investigation." However, McLoughlin did not withdraw her directive to deny Archambault FMLA leave.

27. Plaintiff later participated in the investigation into Archambault's complaint as a witness.

28. In early February 2022, the investigation into Archambault's sexual harassment complaint against Aquino was completed.

29. On or about February 14, 2022, upon receipt of the final investigation report, McLoughlin went to plaintiff's office to discuss the results.

30. During this conversation, plaintiff disclosed to McLoughlin that she had been a witness in the investigation.

31. During this conversation, McLoughlin stated, in sum and substance, "I can't believe that Diane [Aquino] would come on to Debra [Archambault]. Diane is too smart to do something like that." She also stated, in sum and substance, that the agency needed Aquino as its CEO.

32. During this conversation, plaintiff expressed her concern about being able to communicate freely with the Board of Directors about critical matters without Aquino's interference, citing Aquino's initial directive in October 2021 that plaintiff not report Archambault's complaint to the Board.

33. The next day, February 15, 2022, McLoughlin emailed plaintiff to advise that she would likely be sharing the investigation report with the Board's Executive Committee, but not until she received Aquino's rebuttal.

34. McLoughlin later shared the investigation report with Aquino and, upon information and belief, also disclosed to Aquino that plaintiff had been a witness therein.

35. On or about March 31, 2022, just over a month after his colleague, Ms. Leo, completed the investigation and provided the final report, without citing a specific reason, Aquino and McLoughlin terminated the agency's contract with Jim Clark, who had served as the agency's attorney for almost 20 years.

36. McLoughlin and Aquino also sent Clark individual letters stating how disappointed they were with the investigation.

37. Following plaintiff's advocacy for the investigation of Archambault's complaint during her November 3, 2021 meeting with Aquino and McLoughlin, their attitudes toward plaintiff changed drastically, and the two become hostile toward plaintiff.

38. For instance, Aquino failed to follow through with a promise she made to plaintiff, before Archambault filed her complaint, to increase the agency's contribution to plaintiff's 403(b)

retirement account.

39. Aquino also began to shun plaintiff, limiting in-person contact with her, significantly reducing phone conversations, cancelling supervisory meetings, unduly and baselessly criticizing her work, and changing processes in her department without her input.

40. After completion of the investigation and receipt of the final report in early February, both McLoughlin's and Aquino's hostility toward plaintiff intensified.

41. For example, in or about March 2022, Aquino significantly interfered in plaintiff's management and operation of her department, including, *inter alia*, by (1) intruding upon certain of her work functions; (2) directing her to stop HR recruiters from conducting interviews, thereby slowing down the interview process and making the department appear less efficient; and (3) unduly and harshly criticizing her staff and her management of the department.

42. By further example, plaintiff received performance evaluations each April and, for at least the 10 years prior to April 2022, was rated as "Outstanding" in all relevant categories, the highest possible score, including by Aquino in her April 2021 evaluation of plaintiff; however, in April 2022, Aquino completed an evaluation for plaintiff in which, without adequate justification, she lowered her rating of plaintiff from "Outstanding" to "Strong" in two of the fifteen categories.

43. By further example, one of plaintiff's essential functions was to attend agency Board meetings, and she had regularly done so for years; however, on or about April 13, 2022, Aquino instructed plaintiff not to attend the April 28, 2022 Board meeting and remarked that she would let plaintiff know if she needed her to attend future Board meetings.

44. Aquino's criticism of plaintiff and her department following plaintiff's advocacy for investigating Archambault's sexual harassment complaint against Aquino and her participation as a witnesses in that investigation stands in stark contrast to Aquino's remarks just a few months

6

before plaintiff engaged in this protected activity, that, when compared to other Vice Presidents of the agency, plaintiff's work was always accurate and did not need any follow up and that plaintiff had a dedicated and efficient staff with whom she [Aquino] loved to work.

45. Aquino's criticism of plaintiff and her department is also inconsistent with a September 2021 audit conducted by the Council of Accreditation, which gave plaintiff's HR department perfect scores in all thirty-one categories evaluated.

46. In May 2022, Aquino asked plaintiff to present at a meeting of the Board's HR committee regarding certain HR matters, as she had done annually for the sixteen prior years.

47. As she had done in the past, plaintiff prepared a comprehensive presentation.

48. Departing from past practice, prior to the meeting, Aquino asked to review plaintiff's prepared presentation and, without any legitimate justification, criticized certain aspects of it and, for the first time ever, directed plaintiff to make certain changes.

49. Plaintiff complied and made the requested changes.

50. Before the meeting, Aquino met with McLoughlin and other committee members to discuss HR matters.

51. During the meeting of the HR Committee, McLoughlin and Aquino were hyper-critical of plaintiff; McLoughlin spoke to her in a condescending and hostile tone dissimilar to the manner in which she had spoken to and treated plaintiff at past meetings and otherwise over the years prior to the investigation of Archambault's complaint.

52. Indeed, this was not the first such meeting McLoughlin had attended, and she had never before criticized the HR department or plaintiff's leadership thereof.

53. At the conclusion of the meeting the committee asked plaintiff to provide it with certain data but did not provide a deadline for doing so.

54. Two days after the meeting, on May 18, 2022, plaintiff provided some, but not all, of the requested data, and then left town on a previously scheduled and approved three-day leave.

55. While she was away, McLoughlin wrote to plaintiff, complaining that she had not provided all of the requested data.

56. Plaintiff immediately followed up through her subordinate [a Senior VP in the HR Department, who attended HR Committee meetings and regularly covered for plaintiff in her absence], who promptly provided the remaining information to McLoughlin.

57. On May 20, 2022, plaintiff filed a formal complaint of retaliation against Aquino, directing same to Aquino as CEO and copying McLoughlin as Board President.

58. On May 23, 2022, McLoughlin responded to plaintiff's complaint, advising that the matter was going to be investigated; however, upon information and belief, plaintiff's complaint was not investigated.

59. On May 25, 2022, after she returned from leave, plaintiff responded to an email McLoughlin sent on May 19, 2022, which had criticized an email plaintiff sent on May 17, 2022 concerning certain issues that were discussed at the HR committee earlier that month.

60. In her May 25, 2022 letter, plaintiff noted that she believed McLoughlin's change in attitude toward her arose from Archambault's complaint against Aquino and plaintiff's participation in the investigation thereof.

61. Plaintiff further noted that this treatment constituted retaliation for her engagement in protected activity.

62. By letter dated June 7, 2022, SDFS notified plaintiff of its decision, made June 2, 2022, to terminate her employment.

63. Plaintiff received this letter while in Texas on a previously scheduled and approved

FMLA leave to care for her terminally ill mother.

64. SDFS had no legitimate basis to terminate plaintiff's employment and, instead, did so in retaliation for her advocacy for the investigation into Archambault's complaint, her participation as a witness in that process, and her complaints of retaliation against Aquino and McLoughlin.

65. As a result, plaintiff has suffered substantial economic and non-economic harm, including, without limitation, loss of salary, loss of benefits, and emotional distress, including, without limitation, shame, embarrassment, and humiliation, and she has sought and received mental health counseling for same.

## CLAIMS FOR RELIEF

### FIRST CLAIM
**Unlawful retaliatory termination**
**Title VII, 42 U.S.C. § 2000e, *et seq.***
**(against defendant SDFS)**

66. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "65" above.

67. Title VII makes it unlawful for an employer to "discriminate against any of his employees . . . because he [or she] has opposed any practice made an unlawful employment practice by this subchapter or because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

68. Defendant SDFS employs more than 15 employees and, at all relevant times, was plaintiff's employer.

69. By advocating for the investigation into Archambault's sexual harassment complaint, participation as a witness in that investigation, and complaining to Aquino and McLoughlin about their retaliation against her, plaintiff engaged in activity protected under Title VII.

70. By terminating plaintiff because of this protected activity, defendant SDFS violated Title VII's anti-retaliation provision.

71. As a direct and proximate result, plaintiff has suffered both economic and non-economic damages, including loss of wages and emotional distress.

## SECOND CLAIM
**Unlawful retaliatory termination
NYSHRL, N.Y. Exec. L. § 290, *et seq.*
(against all defendants)**

72. Plaintiff hereby re-alleges and incorporates herein by reference each and every allegation set forth in Paragraphs "1" through "65" above.

73. The NYSHRL makes it unlawful for "any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. L. § 296(7).

74. The NYSHRL also provides, in pertinent part: "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. L. § 296(6).

75. Defendant SDFS employs more than 15 employees and, at all relevant times, was plaintiff's employer.

76. By advocating for the investigation into Archambault's sexual harassment complaint, participation as a witness in that investigation, and complaining to Aquino and McLoughlin about their retaliation against her, plaintiff engaged in activity protected under the NYSHRL.

77. By terminating plaintiff because of this protected activity, defendant SDFS violated the NYSHRL's anti-retaliation provision.

78. As plaintiff's superiors and direct perpetrators of the retaliation as set forth herein, defendants Aquino and McLoughlin are liable as an aiders and abettors.

79. As a direct and proximate result, plaintiff has suffered both economic and non-economic damages, including loss of wages and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Accept jurisdiction over this action and all parties;

B. Empanel a jury to hear all claims;

C. Enter an order adjudging and declaring that defendants violated plaintiff's rights under Title VII and the NYSHRL;

D. Award to plaintiff compensatory damages, including backpay, with pre- and post-judgment interest;

E. Order defendants to reinstate plaintiff's employment or, in the alternative, award to plaintiff front-pay, with pre- and post-judgment interest.

F. Award to plaintiff punitive damages, with pre- and post-judgment interest;

G. Award to plaintiff the reasonably incurred attorneys' fees and litigation costs associated with the prosecution of this matter;

H. Award such additional relief as the Court deems just, proper and equitable under the circumstances.

Dated: Goshen, New York
      July 14, 2023

                                          Respectfully submitted,
                                          SUSSMAN & GOLDMAN
                                          *Attorneys for Plaintiff*

                                          By: _____
                                          Jonathan R. Goldman, Esq. (JG8710)
                                          1 Railroad Avenue, Suite 3
                                          P.O. Box 1005
                                          Goshen, New York 10924
                                          (845) 294-3991 [Tel]
                                          (845) 294-1623 [Fax]
                                          jgoldman@sussman.law